JUSTICE SHEEHY,
dissenting:
This Court, having in a line of cases needlessly and illogically enlarged governmental immunity for negligence, now marches overzealously to the ultimate nonsense: a janitor in charge of brooming off snow from the steps outside of a school gymnasium is engaged as an agent in legislative action. So say the majority.
It will be small comfort to the plaintiff Mary Fitzpatrick that the majority are marching against the swell of history, to which the law must eventually bend. The extension of governmental immunity to mere government employees who wrongfully perform or omit to perform purely mechanical duties has no root in history.
“Legal doctrines often flourish long after their raison d’etre has perished. The doctrine of sovereign immunity rests on the fictional premise that the ‘King can do no wrong.’ Even though the plot to *55 assassinate James I in 1605, the execution of Charles I in 1649, and the Colonists’ reaction to George Ill’s stamp tax made rather clear the fictional character of the doctrine’s underpinnings, British subjects found a gracious means of compelling the King to obey the law rather than simply repudiating the doctrine itself. They held his ad-visors and his agents responsible. (Emphasis added.)”
Will v. Michigan Dept. of State Police (1989), _ U.S. _, _, 109 S.Ct. 2304, 2320-2321, 105 L.Ed.2d 45, 68-69 (Justice John Paul Stevens, dissenting).
The majority in this case have carried governmental immunity to a far greater reach than was ever extended in the severest of monarchical history. They have not only excused the king; they have excused the king’s men, his feudal lords and all their vassals.
I.
I particularly object to the contention of the majority that their interpretation of § 2-9-111, MCA, in this and earlier cases is “clear.” Their interpretation is not clear. It is so unclear that they are brought to the admission that they are not asserting in this Opinion “that the statute is unequivocally clear at first glance.” Using themselves as authority, the majority hold that it is now clear “that the plain language of the statute constitutes a clear statutory declaration granting immunity to the relators in this case.” (Slip opinion, page 12.) They said so; ergo, it is. Let us see for ourselves whether the language is plain or the declaration is clear.
Subsection (3) of 2-9-111, MCA, provides:
“(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.”
By rules of English grammar as I understand them, a member, officer or agent of a legislative body is immune if the discharge of his official duty was “associated with the introduction or consideration of legislation or action by the legislative body.” The majority, by their interpretation, eliminate several words from the subsection so that they read it to say that a member, officer or agent of a legislative body is immune if the official duty is “associated . . . with action by the legislative body.” The majority interpretation violates grammatical and statutory rules of construction. We are required not to insert what has been omitted or to omit what has been in *56 serted, and when there are several provisions of particulars we are to give each such a construction as will give effect to all the provisions. Section 1-2-101, MCA. Moreover, in the construction of a statute, the intention of the legislature is to be pursued, if possible. Section 1-2-102, MCA. Statutes in this state are to be liberally construed with a view to effect their objects and to promote justice. Section 1-2-103, MCA.
The intent of the legislature can be gleaned from the heading it used in enacting the statute: “Immunity from suit for legislative acts and omissions.” That heading is a part of the statute.
The meaning of § 2-9-111(3), MCA, is not plain and clear as the majority contends. Further militating against their position, as far as legislative intent is concerned, are the provisions of sec. 2-9-102, which state:
“Every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Art. II, § 18, The Constitution of the State of Montana.(Emphasis added.)”
The majority, by their interpretation of § 2-9-111, MCA, have abrogated the provisions of § 2-9-102, MCA, because now under the holdings of this Court, through its majority, every substratum of state government is immune from suit for the torts of its agents, officers and employees, whether those acts are legislative or administrative, and whether governmental or proprietary.
The majority rely on their decision in Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145. Bieber was a case decided on briefs, without oral argument, and by less than a full court. It involved the act of a county commissioner in discharging an employee. His act was ratified by the county commission. Stretching Bieber to cover a janitor who didn’t scrape snow from a stairway is unsupportable.
The majority also rely upon Peterson v. Great Falls School District No. 1 (Mont. 1989), [237 Mont. 376,] 773 P.2d 316, [8 Ed.Law 61]. Here again, we have an action by an employee for wrongful discharge brought against a school district. The discharge of the employee by an administrative assistant was ratified by the school board at its next regularly scheduled meeting. I dare say that no attempt was made by School District No. 10 to ratify the non-cleaning of its sidewalks by its employees.
What is eminently clear from the foregoing is that § 2-9-111, MCA, is not itself clear. The majority have confounded it by omitting por *57 tions of the statute, by ignoring the legislative intent expressed in the heading of the statute, by abrogating § 2-9-102, MCA, which imposes liability for employee torts, and by not requiring that governmental immunity be specifically provided as required in § 2-9-102, MCA. In so holding, this Court, by its own construction, has extended governmental immunity far beyond any immunity that ever existed in Montana prior to the 1972 Montana Constitution and, now, obviously, in direct reversal of the intentions of the constitutional framers of 1972 who unequivocally abolished governmental immunity.
II.
We have noted in the foregoing that § 2-9-102, MCA, imposes liability on governmental entities for the torts of its employees. The immunity provisions of § 2-9-111, MCA, do not speak of actions by employees but rather actions by agents. The question arises, is it legally correct to consider a janitorial employee to be an “agent” of the school district?
The majority is in error in construing § 2-9-111(2), MCA, to determine that a janitorial employee is an “agent” of the school district; and in construing § 2-9-111(3), MCA, to determine that a janitorial employee is the “agent” of a legislative body, the school district.
The term “agency” has no meaning at all when applied to a janitorial employment.
“The term ‘agency’ means a fiduciary relationship by which a.party confides to another the management of some business to be transacted in the former’s name or on his account, and by which such other assumes to do the business and render an account of it. It has also been defined as the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Thus, the term ‘agency,’ in its legal sense, always imports commercial or contractual dealings between two parties by and through the medium of another. (Emphasis added.)”
3 Am.Jur.2d 509, Agency, § 1.
An employee rendering purely mechanical services is not an “agent” of the master, in the true sense of the word.
Thus:
“The relationship most closely related to the master and servant relationship is, of course, that of principal and agent. Both relate to *58 employment and express the idea of service, and both agents and servants are workers for another under expressed or implied agreement. Indeed, the law of agency is an outgrowth and expansion of the doctrine of master and servant, and it is of course true that the words ‘agent’ and ‘servant’ in a general sense both apply to persons in the service of another. A master is a species of principal and a servant a species of agent. As a result, the words ‘servant’ and ‘agent’ are often used interchangeably by the courts, and indeed, an agent employed to make contracts might also, with respect to some of his duties and activities, be a servant.
“On the other hand, the terms ‘agent’ and ‘servant’ are not wholly synonymous since an agent may be authorized to make contracts on behalf of the principal with third persons and to generally represent him in the business, while a mere servant has no such authority, but renders purely mechanical services as directed by his employer. The essential difference between the two is that an agent represents his principal in business dealings and is employed to establish contractual relations between the principal and third persons, while a servant is not.
“As a general rule, a servant is employed to perform certain acts in a way that is or may be specified, and he may not use his discretion as to the means to accomplish the end for which he is employed. This being so, the service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal. (Emphasis added.)”
53 Am.Jur.2d 84-85, Master and Servant, § 3.
The argument that a mere employee is not an agent in the sense of § 2-9-111, MCA, is buttressed when one examines § 2-9-305, MCA. This statute provides indemnity for employees who are sued for actionable conduct in their service of the government. The indemnity is for full cost of settlements or judgments, as well as for costs and attorney fees. As applied to the relators in this case, if this Court properly held that they were not within the immunity umbrella, they would be protected completely from pecuniary loss for suits against them arising out of their employment. The use by the legislature of the term “agents” in § 2-9-111, MCA, and the use of “employees” in § 2-9-305, MCA, shows that the legislature found a difference in their meanings as applied to the concept of immunity. I would construe the legislative intent to be that “employees” in § 2-9-305, MCA, included both employees and agents; but that “agents” in § 2-9-111, MCA, did not include merely mechanical employees *59 holding purely perfunctory jobs not related to the formation or execution of policy in the field of jurisdiction entrusted to the governmental unit.
It is a perversion of the theory of principal and agent to contend that the janitorial employees were “agents” of the trustees themselves individually. The janitorial employees were in the service of the district, and not in the service of the trustees individually. Thus, trustees under § 20-3-324, MCA, outlining the power and duties of trustees for each school district, have the power and it is their duty to:
“(2) employ and dismiss administrative personnel, clerks, secretaries, teacher aides, custodians, maintenance personnel, school bus drivers, food service personnel, nurses, and any other personnel considered necessary to carry out the various services of the district . . . .” (Emphasis added.)
Having in mind then that a janitorial employee is not within the legal sense an “agent” of the school district, immunity does not accrue to the school district under § 2-9-111, MCA, which grants immunity only as follows:
“(2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.” (Emphasis added.)
Because the janitor is not an agent of the school district, but rather its mere employee, immunity does not apply to the school district in this case.
Now let us consider what is meant by “action by the legislative body.”
Section 2-9-111, MCA, grants immunity to the members of the school board under the following language:
“(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.”
From what we have said above, it is obvious that a janitorial employee is not an agent of a legislative body, but rather is an employee of the district, and as such, immunity does not attach to the members of the district by reason of acts of the janitorial employees. In my judgment, we do not have a question of immunity as far as the school district trustees are concerned, but rather whether they are simply not subject to liability because the acts of the janitorial employees were not imputable to the individual school district trust *60 ees, but rather to the district which employed them. We do not, when private corporate employees are negligent, impute that negligence personally to the president of the corporation; only to the entity of the corporation.
However, since they were employed by the school district, the theory seized upon by some is that the work of the janitors is “an official duty” associated with “action by the legislative body.” Section 2-9-111, MCA. That cannot be under the statutes.
The only way that school trustees can “act” is to act collectively, and at a regular or properly called special meeting.
Section 20-3-301(2), MCA, provides:
“The trustees shall be composed of the number of trustee positions prescribed for a district by 20-3-341 and 20-3-351. When exercising the power and performing the duties of trustees, the members shall act collectively, and only at a regular or a properly called special meeting.” (Emphasis added.)
Section 20-3-301, MCA, stating that members can only act collectively and at their regular meetings must be read in pari materia with § 2-9-111, MCA, which says that the individual members are immune for “action by the legislative body.” The actions of a janitor in maintaining or failing to maintain school premises have no relation to the actions taken by the legislative body in its regular or special meetings and, since the trustees may only act collectively and not otherwise, § 2-9-111, MCA, cannot be read to extend immunity on the very wispy basis that a janitor cleaning off steps to a gym is involved in “action by the legislative body.” That contention is simply ridiculous.
Both of the statutes, § 2-9-111, MCA, and § 20-3-301, MCA, must also be read in pari materia with § 20-3-332, MCA, which provides as follows:
“Personal immunity and liability of trustees. (1) When acting in their official capacity at a regular or special meeting of the board or a committee thereof, the trustees of each district are individually immune from exemplary and punitive damages.” (Emphasis added.)
The “action” of the board trustees can only occur at regular or special meetings and it is only at such meetings that they have an official capacity. Again this statute is a further indication that the legislative immunity granted in § 2-9-111, MCA, to members and agents was never comprehended to grant immunity to school districts for the non-legislative wrongful acts or omissions of the janitorial employees.
*61 III.
There is a sardonic element in this case. The real party in interest shouting “governmental immunity” is probably an insurer. It sold a policy to the school district, promising coverage for comprehensive liability. Because of this Court, the insurer was never at risk for any wrongful acts of the school district personnel outside of motor vehicles. Its premium is pure gravy. In more enlightened former days in Montana, we had statutes which required insurers of state and sub-state risks to waive the defense of immunity. (Former § 40-4401, R.C.M. (1947); former § 33-23-101, MCA). In order to provide a better business climate for insurers, the Montana legislature repealed this requirement in 1979 (Ch. 425, § 4, Laws of 1979; the repealer was contained in S.B. 380, introduced by Senators Hafferman, Towe and Turnage).
The line of cases by which this Court has extended governmental immunity to cover any and all acts of the governmental entities (except for the state itself) and their various members, officers, agents and employees, is such a reversal of history and sound legal thought that it boggles the imagination. We should have begun, in this case, to pick up the pieces. There are problems in defining the duties of school board trustees as they are outlined in the statutes; and in defining the relation of mere mechanical personnel to the school boards as legislative bodies. We should restructure legislative immunity in this state so as not to comprehend and include merely administrative functions. That is how I would decide this case.